**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

TERRENCE L. JACKSON,                 :

             Petitioner,            :

        VS.                       :       **1 : 09-CV-55 (WLS)**

WILLIAM TERRY, Warden,         :

            Respondent.         :

---

**RECOMMENDATION**

The Petitioner filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 2003 Dougherty County conviction for aggravated sodomy and aggravated sexual battery. (Doc. 2). Petitioner's first trial resulted in a mistrial. Following a retrial, the jury returned a guilty verdict, and Petitioner was sentenced to thirty (30) years, serve twelve (12), for aggravated sodomy, and twenty (20) years, serve twelve (12), for aggravated sexual battery, to run concurrently. The Georgia Court of Appeals affirmed Petitioner's conviction and sentence. *Jackson v. State*, 271 Ga. App. 317, 609 S.E.2d 643 (2004).

Petitioner filed a state habeas petition on July 28, 2005 in the Superior Court of Tattnall County. (Doc. 7-2). Following an evidentiary hearing, the state habeas court denied relief, and Petitioner's application for a certificate of probable cause to appeal was denied by the Georgia Supreme Court on March 31, 2008. (Doc. 7-4). Petitioner filed this federal habeas petition on April 6, 2009. (Doc. 2).

**Factual Background**

This Court is "bound under 28 U.S.C. § 2254[(e)] to afford factual findings of state [appellate] courts a presumption of correctness." *Towne v. Dugger*, 899 F.2d 1104, 1106 (11th

Cir. 1990); *Paxton v. Jarvis*, 735 F.2d 1306, 1308 (11th Cir. 1984).  The habeas petitioner "shall

have the burden of rebutting the presumption of correctness by clear and convincing evidence."

28 U.S.C. § 2254(e)(1).  The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") thus

retains the statutory presumption of correctness that is to be afforded state courts' factual

findings.  *Id.*  As no dispute has been raised herein regarding the findings of fact issued by the

Georgia Court of Appeals, said findings are hereby adopted as follows:

> K.M. [the victim's sister] testified that on the night in question, she
> and C.T. [the victim] had gone to a bar known as the Sports Zone
> with a friend.  They left the sports bar around midnight and went to
> another bar called Big Daddy's, where they encountered Jackson,
> whom they had seen at the sports bar.  Jackson engaged C.T. in
> conversation and then asked her to go with him to a restaurant to get
> something to eat.  Although K.M. did not think it was a good idea,
> C.T. accepted Jackson's invitation.
>
> C.T. testified that Jackson did not, however, go to the restaurant.
> Instead, he drove down a dirt road, parked his car, forcefully
> removed some of her clothing, and forced himself sexually upon
> her.  According to C.T., Jackson forcefully inserted his finger and
> penis into her vagina and placed his mouth on her vagina.  He then
> fell asleep because he had been drinking, whereupon C.T. escaped
> to a nearby mobile home park.  She knocked on the door of Antonio
> Williams's mobile home and told him she had been raped.  Williams
> testified that C.T. was crying, that her hair was disheveled, and that
> she appeared to be extremely upset.  He called the police.
>
> City of Albany Police Officer Graham Stacy responded to the call.
> Stacy testified that C.T. was trembling, crying, and generally
> appeared very traumatized.  She told him she had been raped and
> gave descriptions of her assailant and the vehicle he was driving.
> Stacy put out a radio alert for the suspect, and C.T. was taken to the
> hospital.  Responding to the alert, Officer Donald Williams stopped
> a car being driven by Jackson.  Officer Gary Price brought K.M. to
> the scene, and she positively identified Jackson.  En route to the
> police station, Jackson told Officer Gregory Elder that he had been
> at his mother's home during the time period in question. However,
> C.T's shoes were recovered from his car, and her underwear was
> found at the crime scene.

The nurse who performed the sexual assault examination of C.T. testified that C.T. had two scratches on her neck consistent with her description of the manner in which Jackson had subdued her physically.  The nurse took swabs of her external genitalia and breasts and from inside her vagina.  GBI crime lab forensic biologist Clint Buchanan testified that he had found the presence of amylase, a saliva enzyme, on the external genitalia swabs.  At the first trial, GBI crime lab forensic biologist Brad Pearson testified that he extracted DNA from blood samples given by C.T. and Jackson, and that all the DNA from the external genitalia swabs matched C.T.'s DNA, but none of the DNA matched Jackson's. Pearson, however, testified that this could have been attributable to the fact that amylase lacks sufficient epithelial cells (containing DNA) from which to extract a DNA pattern and thus did not rule out the possibility that the saliva was Jackson's.  At the second trial, Buchanan provided essentially the same testimony he and Pearson had given at the first.  Officer Cheryl Clark, who interviewed Jackson, testified that he initially said that he knew nothing about the incident and had been home all night. After being informed that C.T.'s shoes had been found in his car, Jackson admitted that he had not been home all night but denied having raped C.T.

At the first trial, Jackson denied that he had been at the Sports Zone on the evening in question, but he admitted that he had been at Big Daddy's.  He claimed that C.T. had approached him at Big Daddy's and that she was angry with him because of an incident the night before involving her other sister, K.T.  He denied having any other contact with C.T. that night.

*Jackson*, 271 Ga. App. at 318-19.

## Standard of Review

Pursuant to 28 U.S.C. § 2254 (d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  In interpreting this portion of the federal habeas rules, the Supreme Court has ruled that a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a

conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, the Court held that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (quoting *Williams*, 529 U.S. at 407).

Accordingly, the Petitioner must first establish that the state habeas court's adjudication of his claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In other words, as this is a post-AEDPA case, the Petitioner herein may obtain federal habeas relief ***only*** if the challenged state court decision was either contrary to or an unreasonable application of Federal law as determined by the Supreme Court, or if the state court issued an unreasonable determination of the facts. *Williams*, 529 U.S. at 405; *Early v. Packer*, 537 U.S. 3, 7 (2002); 28 U.S.C. § 2254(d).

**Petitioner's Habeas Claims**

In his Petition for federal habeas relief, the Petitioner sets forth the following four grounds

for relief: 1) judicial misconduct; 2) ineffective assistance of trial counsel; 3) ineffective

assistance of appellate counsel for failure to raise judicial misconduct on appeal; 4) ineffective

assistance of appellate counsel for failure to raise ineffective assistance of trial counsel on

appeal. (Doc. 2).

*Judicial misconduct*

In Ground 1, Petitioner alleges there was judicial misconduct, in that, when the victim was

identifying her attacker, the trial judge expressed his opinion by stating that the witness was

pointing to the Defendant. (Doc. 2).  Petitioner asserts that the trial judge's statement resulted in

a "total violation of due process to a fair and partial [sic] jury as finders of fact." (*Id.*).

However, in his state habeas petition, Petitioner did not state that his due process rights were

violated, rather he alleged that the trial judge violated O.C.G.A. § 17-8-57.  (Doc. 7-2).

The state habeas court set out the alleged judicial misconduct colloquy as follows:

> Q: Do you see the person in this courtroom that had you in this
> vehicle?
> A: Yes.
> Q: Do you see what he is wearing right now in the courtroom?  If so
> point him out and describe what he has o[n] today?
> A: The young fellow with the white shirt, green tie.
> **Judge Stephen Gross** [sic]: She is pointing to the defendant.
> (January 6, 2003 Trial Transcript, Volume I, page 53, lines 1-8).

(Doc. 7-3, p. 3) (emphasis in original).

In analyzing this issue, the state habeas court relied on Georgia law, as the ground for

relief alleged a violation of a Georgia statute.  This application of law was not contrary to nor an

unreasonable application of federal law.

Under federal law, "the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." *Quercia v. U.S.*, 289 U.S. 466, 469 (1933). A trial judge may assist the jury by "explaining and commenting upon the evidence[.]" *Id.* The judge may also "take measures to ensure that the trial progresses smoothly, and may comment on the evidence, so long as he is careful to instruct the jury that they are the sole judges of the facts." *U.S. v. Gomez- Rojas*, 507 F.2d 1213, 1223 (11th Cir. 1975).

Relying on Georgia law, the state habeas court determined that the trial judge did not violate state law, as alleged by Petitioner. (Doc. 7-3). The court found the following:

> Contrary to the Petitioner's argument, while the trial judge did comment on the actions of the witness who was testifying, his comment did not amount to an unlawful expression as [to] the witness'[s] credibility nor did it infer an opinion as to the Petitioner's guilt or innocent [sic]. Georgia Courts have held that a correct statement by the court as to the testimony of a witness does not amount to an improper expression of opinion. Here, the trial judge did not express an opinion on the evidence nor did he comment on an issue of fact. Rather, the trial judge made a reference on the record in regards to the testifying witness's action. Thus, there was no violation of O.C.G.A. §17-8-57.

(*Id.* at 3).

While the state habeas corpus court did not explicitly rely on federal law, it does not appear, nor has Petitioner shown, that the state habeas court's decision in this matter was contrary to or an unreasonable application of federal law. Relying on the principles of federal law that are established in Georgia law, the court found that the trial court did not err when it made a reference, on the record, to the actions of a testifying witness. The facts, as found by the state habeas court, establish there was no violation of Petitioner's due process rights. The state habeas court's decision is not contrary to nor an unreasonable application of clearly established

federal law.  Accordingly, Ground 1 will not support the granting of habeas relief herein.

*Ineffective assistance of counsel*

Petitioner alleges ineffective assistance of counsel in Grounds 2, 3, and 4 of his federal

habeas Petition.  Specifically, in Ground 2, Petitioner alleges that he received ineffective

assistance of trial counsel because his trial counsel failed to move for a mistrial after the alleged

judicial misconduct. In Ground 3, Petitioner alleges that his appellate counsel was ineffective for

failing to raise, on direct appeal, the judicial misconduct.  In Ground 4, Petitioner alleges that he

received ineffective assistance of appellate counsel because his appellate counsel failed to raise,

on direct appeal, the claim of ineffective assistance of trial counsel.

In determining if Petitioner's trial and appellate counsel were ineffective, the state habeas

corpus court applied the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to

find that Petitioner had failed to meet his burden to show deficient performance and actual

prejudice as to the allegation of ineffective assistance of counsel.

The state habeas court applied the correct standard for evaluation of ineffective assistance

of counsel claims.  In *Strickland v. Washington,* 466 U.S. at 687, the United States Supreme

Court created a two-part test for determining whether a defendant received ineffective assistance

of counsel. First, a defendant must demonstrate that his attorney's performance was deficient,

which requires a showing that "counsel made errors so serious that counsel was not functioning

as the 'counsel' guaranteed by the Sixth Amendment." *Id.*  Second, a defendant must

demonstrate that the deficient performance prejudiced the defense to such a degree that the

results of the trial cannot be trusted. *Id.*

Under the first prong, the reasonableness of an attorney's performance is to be evaluated

from counsel's perspective at the time of the alleged error and in light of all the circumstances.

*Id.* at 690.  The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish that there is a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the *Strickland* test. *Holiday v. Halley*, 209 F.3d 1243 (11th Cir. 2000).  The *Strickland* court stated that "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Strickland*, 466 U.S. at 697.

Additionally, a criminal defendant has a right to counsel on appeal, "limited to the first appeal as of right".  *Evitts v. Lucy*, 469 U.S. 387, 394 (1985).  However, this right does not encompass a right to compel said counsel to pursue every claim deemed meritorious by the defendant.  The Supreme Court has expressly held that "[n]either *Anders* nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  "Experienced advocates since time beyond memory have emphasized the importance of

winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at

most on a few key issues." *Id.*

After discussing the applicable standards for evaluating the claim of ineffectiveness of

both trial and appellate counsel, citing Georgia cases which rely on the principles found in

*Strickland v. Washington*, the state habeas court found that:

> [T]he trial court did not violate the standards as set forth by Georgia
> statute, thus any decision or action by Petitioner's trial and appellate
> counsel was not mandated, rather the decision was made as a part of
> the counsel's strategy in their defense of the Petitioner. Thus, the
> Petitioner has failed to show that his trial and appellate counsel
> rendered ineffective assistance of counsel.

(Doc. 7-3, p. 4).

It does not appear, nor has Petitioner shown, that a state court's decision in this matter was

contrary to or an unreasonable application of federal law. The state habeas court relied on the

principles governing ineffectiveness set forth in *Strickland v. Washington*, the clearly established

law in this area, and determined that Petitioner's trial and appellate counsel provided the

Petitioner with effective representation. Relying on the principles of *Strickland,* as incorporated

into Georgia law, the court found that counsel was not deficient. The state habeas court's

decision is not contrary to or an unreasonable application of clearly established federal law, nor

is it based on an unreasonable determination of the facts. Therefore, Grounds 2, 3, and 4 will not

support the granting of habeas relief herein.

*Conclusion*

As none of the grounds raised by the Petitioner will support the granting of federal habeas

relief, it is the recommendation of the undersigned that this Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254 be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may

serve and file written objections to this Recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Therefore, it is recommended that the Court deny a certificate of appealability in its Final Order. If the Petitioner files an objection to this Recommendation, he may include therein any arguments he wishes to make regarding a certificate of appealability.

**SO RECOMMENDED**, this 22nd day of June, 2011.


**s/ *THOMAS Q. LANGSTAFF***

**UNITED STATES MAGISTRATE JUDGE**


llf